NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MPG WEST, LLC,**
*Appellant*

**v.**

**SECRETARY OF DEFENSE,**
*Appellee*

---

2023-1430

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 61100, 61560, 61570, Administrative Judge J. Reid Prouty, Administrative Judge Kenneth David Woodrow, Administrative Judge Richard Shackleford.

---

Decided: May 17, 2024

---

YUKI HARAGUCHI, Holmes Pittman & Haraguchi, LLP, Chester, MD, argued for appellant.

KELLY GEDDES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, EVAN WISSER.

---

Before DYK, CLEVENGER, and STOLL, *Circuit Judges*.

PER CURIAM.

MPG West, LLC ("MPG") appeals the decision of the Armed Services Board of Contract Appeals ("Board") regarding its contract claims against the Defense Commissary Agency ("DeCA"). The Board erred in failing to determine whether the contract at issue required MPG to import bagged salads from the United States. For this reason, this court vacates the Board's decision and remands the case to the Board for further proceedings. In other respects, we affirm.

I

DeCA is an agency of the U.S. Department of Defense that operates grocery stores for the military. This appeal concerns the requirements contract HDEC09-15-D-0002 (the "Contract") which provided for the supply of fresh fruits and vegetables ("FF&V") including bagged salads[1] to commissaries in Japan and South Korea. Prior to the Contract, the government subsidized the cost of transporting FF&V to the Pacific region. Thereby, the transportation cost was not included in the FF&V prices paid by commissary customers.

On February 3, 2014, DeCA released Solicitation No. HDEC09-14-R-0002 for providing FF&V to Japan, South Korea, and Guam. The solicitation required free on board ("FOB") destination delivery, which makes the seller responsible for the cost of shipping the supplies. DeCA was aware that the prices for FF&V would increase because DeCA would no longer be subsidizing the cost of transporting FF&V to the Pacific region.

---

[1] After full review of the parties' arguments, this court finds no error in the Board's decision with respect to all other aspects of the Contract other than with respect to bagged salads, as discussed below.

The solicitation was amended six times which included published questions and answers. During this process, DeCA communicated to offerors that the winning contractor would need to "locally source as much FF&V as possible from the local market, which would include locally available imported items." J.A. 4 ¶ 10 (quoting J.A. 647).

The solicitation also required the contractor to supply bagged salads from a list of approved sources[2] and requested offerors to identify the brand name of their salad supplier. Several contractors asked questions suggesting that the bagged salads could not be obtained locally. For example, in Amendment No. 1, a potential vendor stated that "[t]here is no local availability or even regional availability for bagged salad items like this from an approved source. This will require the product be airlifted." J.A. 649; *see also* J.A. 656. DeCA responded that "[i]t is a potential offeror's responsibility to source all products to include bagged salads locally or as close to locally as practical." J.A. 648.

MPG, who was a subcontractor under the prior contract, submitted a bid on the solicitation and selected Fresh Express from the Worldwide Directory as its preferred partner to provide bagged salads. On May 22, 2015, the government awarded the Contract to MPG to become the "primary source of supply" for FF&V in Japan and South Korea. J.A. 127. The Contract incorporated the HDEC09-14-R-0002 solicitation and an Attachment 11 which established Fresh Express as the sole source of bagged salads for the Contract.

With respect to pricing, the Contract said that "[p]rices shall be firm fixed and inclusive of all costs, overhead and profit." J.A. 130. However, the Contract also required

---

[2]     Specifically, the bidder needed to select a company listed on the Worldwide Directory of Sanitarily Approved Sources for Armed Forces Procurement ("Worldwide Directory").

MPG to update its prices on a weekly basis. The Contract also included a provision that the "Government will monitor all other prices provided on the weekly price lists for being fair and reasonable considering the market conditions at the time." J.A. 130.

Performance on the Contract began on November 1, 2015. MPG never implemented a local sourcing plan and sourced most of its produce from the United States and Mexico. MPG shipped the Fresh Express bagged salads via airfreight.

During performance, produce items were priced extremely high and there was concern about the high prices. At the weekly price reviews, if DeCA determined that a price for a certain item was "unreasonable," it would direct MPG either to reduce the price or remove the item from the weekly catalog. DeCA monitored social media sites for complaints and considered those complaints when directing MPG to reduce prices or remove items. DeCA did not independently analyze MPG's profit or overhead when performing the weekly price analysis meetings.

MPG told DeCA that it was having trouble with the bagged salad requirement and requested assistance because it was losing so much money on these products.

On March 22, 2016, MPG submitted a certified claim under the Contracts Disputes Act ("CDA"). MPG made a number of claims including that DeCA "forced MPG West to sell its produce at prices below MPG West's costs of importation, and prevented MPG West from selling produce it imported." J.A. 2. In July 2016, two subcontractors effectively took over all the cost and performance of the contract.

On January 3, 2017, the government issued a contracting officer's final decision ("COFD") denying MPG's claims.

On March 21, 2017, MPG appealed the COFD to the Board.[3]

The Board rejected all of MPG's theories for recovery because MPG's "financial losses resulted predominantly from factors within its control" while noting that MPG "failed to timely implement a local sourcing plan" and "sourced most of its produce from overseas." J.A. 29.

MPG timely appealed the Board decision, and this court has jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

First, MPG argues that the Board erred by "finding that FF&V importation was not subject to the SOFA inspection process."[4]  Br. for Appellant at 57 (emphasis removed).  Specifically, MPG argues that it was "obligated to import items under the SOFA process," and that this enables it to recover excess costs incurred.  *Id.* at 58.  We see no error in the Board's analysis.  At the outset, we note that MPG appears to misread the Board's conclusion that "[t]he [C]ontract did not require MPG West to import produce under the SOFA.  The [C]ontract gave the contractor the discretion whether to import produce items pursuant to SOFA."  J.A. 13 ¶ 81 (citations omitted).  The Board thus found that the Contract, with its emphasis on local

---

[3]  MPG later filed two new claims: one for bagged salad costs on a theory of constructive change, and one for the same costs based on the government's termination of the requirement.  The Board consolidated these two claims with the appeal of the first COFD.

[4]  The "SOFA inspection process" refers to importation requirements under the Status of Forces Agreements between both the United States and Japan as well as the United States and Korea.  These SOFAs "set[] certain terms and procedures for produce brought into Japan or Korea for consumption by U.S. Military personnel." J.A. 13 ¶ 79.

sourcing, gave MPG discretion whether to import items at all, and that MPG made a "business decision" to import goods through the SOFA process. J.A. 47. Even if the Contract required utilization of the SOFA process, the Contract expressly placed the burden of complying with importation requirements on the contractor. We see no error in the Board's analysis.

Second, MPG argues that DeCA failed to anticipate the effect on prices that would result from the new contract model, including by failing to conduct adequate market research, and that the Contract was therefore flawed from the start. MPG identifies no contract representations by the government of the feasibility of performing according to the new contract model, and no authority for the proposition that the government has an affirmative duty to study the prices or costs that a contractor will incur to perform a contract before offering a solicitation. We are aware of none, and this argument is without merit.

Third, MPG argues that DeCA did not act in good faith during the weekly price review meetings. The Board concluded that DeCA behaved reasonably and "developed and applied reasonable and consistent criteria to evaluate weekly prices based on the past history of prices for particular items." J.A. 29. Moreover, the Board found that MPG "failed to timely implement a local sourcing plan," which resulted in most of MPG's financial losses. *Id.* We see no error in that fact finding with respect to almost all of the FF&V products. Indeed, the solicitation made clear that prospective contractors would need to "locally source as much FF&V as possible from the local market," which MPG failed to do, and MPG makes no showing here that locally sourcing would not have been feasible for any products except possibly for the bagged salads. J.A. 37 (quoting J.A. 647).

However, we think that remand is required as to the bagged salad requirement. MPG's theory is that when it supplied bagged salads from Fresh Express at a price that was inclusive of all costs of transportation, customs

clearance, and overhead, the price paid by patrons was greater than what DeCA would accept, and that DeCA breached the Contract by refusing to purchase bagged salads at the offered price. Br. for Appellant at 47; *see also* Oral Arg. at 4:28–4:37 ("[T]he assumption, picking Fresh Express, was that the contractor would be able to recoup its costs, because this is a fixed-price contract.").

A question arose during oral argument as to whether bagged salads needed to be imported because of the requirement to use Fresh Express in the Contract as the sole source for DeCA's bagged salad requirements. Oral Arg. at 12:07–15:43, 20:05–20:48, 26:04-27:13. Specifically, MPG argued that "there were certain items such as the bagged salad that it was not possible to source Fresh Express salad locally because it isn't there." Oral Arg. at 12:19–12:28.

The parties were unable to point to any fact finding by the Board on this specific question (Oral Arg at 27:53–28:44, 38:53–39:05).

Consequently, we vacate the Board's decision and remand the case for further proceedings. On remand, the Board is instructed to find, as a matter of fact, whether the Contract required MPG to import DeCA's bagged salad requirements, and if so, to determine the effect, if any, of that requirement on MPG's claims for relief with regard to the Contract's bagged salad requirements.

## AFFIRMED IN PART, VACATED AND REMANDED IN PART

COSTS

No costs.